

**United States Department of Justice**

*United States Attorney*
*Northern District of New York*

*445 Broadway, Room 218*      *Tel.: (518) 431-0247*
*James T. Foley U.S. Courthouse*      *Fax: (518) 431-0249*
*Albany, New York 12207-2924*

June 2, 2024

<u>**By Email // To Be Filed With Redactions**</u>

Hon. Christian F. Hummel
U.S. Magistrate Judge
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207

    **RE:**    <u>**United States v. Kris Roglieri**</u>, No. 1:24-CR-261 (CFH)

Dear Judge Hummel:

    We respectfully submit this letter in support of the government's motion for detention pursuant to 18 U.S.C. § 3142(e), (f)(2)(B). As set forth in more detail below, the defendant presents an unmistakably serious risk of obstruction of justice and danger to the community based on his threats of violence, including his recent threat to murder an FBI agent who is investigating him. The defendant should be detained pending trial.

<u>**Background**</u>

    The case arises from an ongoing investigation into a fraud and money laundering scheme perpetrated by Roglieri and others via Prime Capital Ventures, LLC ("Prime Capital"), a purported commercial lending business, that began to unravel in late fall 2023. Since that time, Roglieri, his companies, and others have been the subject of several litigations in this District and elsewhere, as detailed in relevant part below for context.

    As set forth in the complaint in this proceeding (Dkt. # 1), Prime Capital held itself out as a commercial lending business. As part of contractual arrangements with its borrower clients located across the country, Prime Capital obtained upfront interest payments from prospective borrowers while it sought to secure loans for those borrowers. Prime Capital characterized these upfront interest payments as the "Interest Credit Account Payment," or "ICA" payment. ICA payments did not represent fees to Prime Capital. Instead, each borrower's upfront ICA payment would be debited over time as the loan was funded and accrued more interest. An ICA payment would also be refundable if Prime Capital failed to secure a loan for the borrower client.

    ***The Involuntary Bankruptcy Proceeding.*** Prime Capital was the subject of an involuntary Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of New York that was filed on December 19, 2023 and captioned *In re Prime Capital Ventures,*

*LLC*, No. 1:23-bk-11302 (Bankr. N.D.N.Y.) (the "Involuntary Bankruptcy Proceeding"). In that proceeding, three Prime Capital creditors filed a petition to put Prime Capital into bankruptcy based on allegations that Prime Capital had fraudulently taken and refused to return $43 million from numerous entities, including more than $20 million from the petitioning creditors. No. 1:23-bk-11302, Dkt. ## 1, 4. The petitioning creditors alleged that Prime Capital defrauded its borrower clients by using the ICA funds that those clients paid to Prime Capital – as pre-payment of interest on yet-to-be issued loans – for Prime Capital's own purposes and then failed to return the ICA funds when the loans did not materialize. *See, e.g.*, No. 1:23-bk-11302, Dkt. # 4. On December 21, 2023, the Bankruptcy Court appointed an interim trustee to oversee Prime Capital. No. 1:23-bk-11302, Dkt. # 13. The Bankruptcy Court dismissed the Involuntary Bankruptcy Proceeding on January 9, 2024, at the request of both the petitioning creditors and Prime Capital. No. 1:23-bk-11302, Dkt. # 87.

**The Receivership Proceeding.** Following the dismissal of the Involuntary Bankruptcy Proceeding, on January 12, 2024, one of the above-referenced creditors sued Prime Capital, the defendant, and other parties in the United States District Court for the Northern District of New York. *See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC et al.*, No. 1:24-cv-55 (MAD/CFH) (N.D.N.Y.) (the "Receivership Proceeding"). In that case, the presiding U.S. District Judge signed an Order to Show Cause for January 22, 2024, and appointed a temporary receiver in the interim. No. 1:24-cv-55, Jan. 22, 2014 Text Min. Entry. The District Court permanently appointed the receiver on January 24, 2024. No. 1:24-cv-55, Dkt. # 56.[1] On January 30, 2024, the District Court entered an order temporarily restraining the defendant and others from transferring, selling, disposing, or encumbering the funds in Prime Capital's financial accounts, as well as a number of vehicles. No. 1:24-cv-55, Dkt. # 78. The defendant was dismissed without prejudice from the Receivership Proceeding on March 19, 2024 based on his personal bankruptcy filing, discussed *infra*. No. 1:24-cv-55, Dkt. # 160.

**The Personal Bankruptcy Proceeding.** On February 15, 2024, the defendant filed a personal bankruptcy action in this District under Chapter 11 of the Bankruptcy Code, a provision that debtors generally use to maintain control of their estate's property while they seek to restructure their finances with court approval. *See In re Kris Daniel Roglieri*, No. 1:24-bk-10157 (Bankr. N.D.N.Y.) (the "Personal Bankruptcy Proceeding"). In late April 2024, the U.S. Trustee moved to convert the Personal Bankruptcy Proceeding into a proceeding under Chapter 7 of the Bankruptcy Code based on claims that the defendant was, among other things, depleting assets of the estate (including by spending $1.5 million from his personal bank account in the span of several weeks prior to his personal bankruptcy filing) and had testified at creditors' meetings that he had no job, no income, and no prospects for same. No. 1:24-bk-10157, Dkt. # 119 at 1-3. On May 15, 2024, the Bankruptcy Court granted this motion. No. 1:24-bk-10157, Dkt. # 159. In Chapter 7 proceedings, a trustee liquidates the debtor's assets in order to repay creditors, leaving the debtor with little control over the process as compared to a Chapter 11 proceeding. The same day that the Bankruptcy Court granted the motion to convert the proceeding, the U.S. Trustee appointed Christian H. Dribusch, Esq. as interim trustee of the defendant's estate. No. 1:24-bk-10157, Dkt. # 160.[2]

---

[1] This order is subject of a pending interlocutory appeal. The Second Circuit denied a stay of the order pending appeal.

[2] Mr. Dribusch will become a permanent trustee unless the defendant's creditors elect a different permanent trustee.

On May 20, 2024, the Bankruptcy Court held a hearing on the interim trustee's motion for turnover of the defendant's estate's property to the interim trustee.  No. 1:24-bk-10157, Dkt. ## 166, 186.  According to a recording of the hearing, the defendant appeared *pro se* because his bankruptcy counsel sought to withdraw from the proceeding following the conversion.  In objecting to the motion for turnover, the defendant told the court that "the last several months have ripped apart my life in more ways than anyone can imagine."  He further said that he found the positions taken by an Assistant U.S. Trustee to be "very disturbing."  At the end of the hearing, the Bankruptcy Court granted the motion for turnover.  No. 1:24-bk-10151, May 20, 2024 Text Entry.

On May 24, 2024, the interim trustee emailed the defendant inquiring about the location of the defendant's sizable collection of firearms, which were among the assets that the defendant had been ordered to turn over.[3]  The defendant responded that "I will" provide the location of the firearms.  Ex. 1.  The defendant and the interim trustee then exchanged emails about the interim trustee's having frozen one of the defendant's bank accounts.  The defendant responded, by email on May 24, "Christian I literally have no credit cards and no money for basic living expenses. Fucking cocksucker."  *Id.*  On May 28, 2024, the defendant wrote to the Bankruptcy Court seeking an "emergency hearing" based on the interim trustee's freezing of the defendant's "last remaining funds" and stating "I have no way to provide basic needs for myself and my children . . . ."  No. 1:24-bk-10157, Dkt. # 189.  Later in the week, the defendant finally informed the interim trustee that the firearms disclosed to the Bankruptcy Court were being stored at a Queensbury gun range and store.[4]

***The Searches.***  On February 2, 2024, the FBI conducted court-authorized searches of, among other places, the defendant's Queensbury property in connection with the investigation. During the search, agents observed numerous firearms, including an AR-15 style rifle and a high-capacity magazine.  State authorities subsequently charged the defendant with two counts of Criminal Possession of a Weapon in the Third Degree, in violation of N.Y. Penal Law § 265.02(7), (8), for possession of these items.  These charges are currently pending.

***The Defendant's Increasingly Threatening Behavior.***  The defendant has made increasingly concerning threats in discussions with ▮▮▮▮▮▮▮▮▮ Person-1.[5]  During a February 16, 2024 interview, Person-1 stated that around mid-January 2024, in a telephone conversation, the defendant said that he would "take out" the receiver and judge who were involved

---

[3] In the Personal Bankruptcy Proceeding, the defendant's counsel disclosed to the Bankruptcy Court that he owned 20 firearms, including three pistols and several shotguns.  No. 1:24-bk-10157, Dkt. # 80 at 34.

[4] After Friday's initial appearance, the FBI obtained a list of the firearms stored at this facility that matches the list of firearms disclosed to the Bankruptcy Court.

[5]



in his bankruptcy proceeding. Text messages between Person-1 and the defendant, found on Person-1's cell phone, include the following:

- January 21, 2024: "I'm fucking gonna wack anybody that comes after me," "Fair game," and "You wanna come after me with guns you gonna get the same." Ex. 2.

- January 25, 2024: "I feel myself getting angry and vengeance to those that are doing this," "Including the attories [sic], judge, receiver etc," "I don't really play by the rules," "Never have and never will," and "And that's dangerous as I feel myself getting to that point with all involved against me." Ex. 3.

Of note, on February 2, 2024, the defendant was compliant when FBI agents searched his home; he was also compliant when FBI agents seized vehicles from his home on March 5, 2024, pursuant to warrants issued by this Court.

On the evening of Friday, May 24, 2024, this Office was contacted by Person-1's representative to urgently report threats that the defendant had relayed to her. An FBI supervisory agent interviewed Person-1 by phone later that night. She disclosed that earlier in the night, the defendant told her that he was in a "dark place," because he was going through bankruptcy proceedings, had no money, and felt he would be indicted soon. The defendant told her that he knows the three FBI Agents who are investigating him. The defendant further stated that he knew the home address of one of the agents (whom he correctly identified by first name), and that the defendant would "put a bullet in [that agent's] head." In a subsequent interview, Person-1 described the threats as the defendant telling her that "'he knows where [one of the agents] fucking lives' and that he would not put it past himself 'to put a bullet in [that agent's] head.'" The defendant also told Person-1 that "when someone takes everything away from you . . . if I go down, everyone goes down." At another point he said, "I ain't going out like that."

***The Criminal Complaint.*** On May 28, 2024, the government obtained the criminal complaint in this proceeding charging the defendant with one count of wire fraud. In sum, the complaint alleges that the defendant defrauded a prospective borrower of a $5 million ICA payment while the Involuntary Bankruptcy Proceeding was pending. The defendant promised to keep the ICA payment in a separate and distinct account, but immediately broke that promise by using the money on, among other things, a financial obligation owed to another Prime Capital client and the defendant's personal expenses, including a $84,000 watch and $101,000 for private jet flights. *See* Dkt. # 1.

## LEGAL STANDARD

The Bail Reform Act of 1984 authorizes and sets forth the procedures for pretrial detention of a criminal defendant. *See generally* 18 U.S.C. §§ 3141 *et seq*. Detention determinations are a two-step inquiry. *See, e.g.*, *United States v. Dai*, 2023 WL 11016392, at *1 (N.D.N.Y. Dec. 19, 2023) (Sannes, C.J.). First, the court must determine whether a detention hearing is authorized. *Id.* A detention hearing is authorized only if the government establishes by a preponderance of the evidence that the case involves one of the offenses enumerated in 18 U.S.C. § 3142(f)(1) or that the defendant presents certain risk factors identified in 18 U.S.C. § 3142(f)(2). *See, e.g.*,

*United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019).  Second, "if the court determines that a detention hearing is authorized, the court must consider whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community by applying four factors listed in § 3142(g)." *Dai*, WL 11016392, at \*2 (citing *United States v. Berrios–Berrios*, 791 F.2d 246, 249 (2d Cir. 1986)).

"[T]he Court may consider uncharged conduct in assessing the degree of danger posed by a defendant's release."  *United States v. Bruno*, 89 F. Supp. 3d 425, 430 (E.D.N.Y. 2015) (citing *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) (reversing release, ordering detention, and rejecting "requirement that the violent conduct . . . be connected to the activity charged in the indictment")).

Because the rules concerning admissibility of evidence in criminal trials do not apply to bail hearings, the parties may proceed by way of proffer.  *See, e.g.*, *Abuhamra*, 389 F.3d 309, 325 (2d Cir. 2004) (noting that "[t]he proceeding here at issue, a . . . bail hearing, permits receipt of hearsay evidence and does not determine guilt or innocence"); *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (affirming bail decision where "the government proceeded almost entirely by proffer").  Thus, "courts often base detention decisions on hearsay evidence." *United States v. Boustani*, 356 F. Supp. 3d 246, 251 (E.D.N.Y. 2019).

## ARGUMENT

## I.     A Detention Hearing Is Warranted

Under 18 U.S.C. § 3142(f)(2), the government can seek detention by establishing that there is "(A) a serious risk [the defendant] will flee; or (B) a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."

As the Court correctly found at Friday's initial appearance, a detention hearing is warranted here.  There is ample reason to conclude that the defendant will obstruct justice and threaten prospective witnesses if he is released.  Indeed, the defendant has actively voiced his intent to kill an agent involved in the investigation of his conduct.  *See supra* at 4.  Prior to that, the defendant suggested that he wanted to harm the attorneys and federal judges involved in the various litigations concerning his conduct.  *See supra* at 3-4.  Taken together, these troubling statements meet the government's burden for obtaining a detention hearing.

## II.     The Defendant Should Be Detained

"[I]f a detention hearing is mandated under Section 3142(f), the Bail Reform Act permits pretrial detention if, after the hearing, the prosecution establishes that no assortment of bail conditions reasonably will assure the defendant's presence and the safety of others."  Gordon Mehler *et al.*, *Federal Criminal Practice: A Second Circuit Handbook* § 4-3 (22d ed. 2022).  To make such a determination, a court considers the following statutory factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any

person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g). The weight to be accorded to each factor is "the special province" of this Court as the factfinder. *United States v. Shakur*, 817 F.2d 189, 196 (2d Cir. 1987).  "If, based on an application of these factors, the court determines that 'no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community,' the defendant must be detained." *Dai*, 2023 WL 11016392, at * 6 (quoting 18 U.S.C. § 3142(e)(1)).  A detention finding on this prong must "be supported by clear and convincing evidence."  18 U.S.C. § 3142(f).  On balance, analysis of the statutory factors shows that there is no set of conditions that would assure the safety of the community if the defendant were released.

  ***The Nature and Circumstances of the Offense Charged.***  While non-violent, the defendant's offense is very serious.  As alleged in the complaint, while in bankruptcy proceedings where his company's creditors alleged frauds exceeding $40 million, the defendant nevertheless brazenly defrauded yet another victim of $5 million.  And this happened even as Prime Capital was under the supervision of an interim bankruptcy trustee.  To do this, the defendant caused the victim to turn over its money subject to an express agreement by the defendant to maintain the victim's money in a "trust fund" and that the money would be refundable.  The defendant took that money and transferred it into the account of one of his other companies.  From there, the defendant made numerous transfers of the funds, including by sending $950,000 to meet a financial obligation to *another* Prime Capital client; paying $84,000 for his purchase of a Rolex watch; and paying $101,000 to a private jet services company, for round-trip, private air travel between Albany and Anguilla, for a family vacation.  Thus, "the gravity of [the] charges weigh in the government's favor."  *Cf. United States v. Dupree*, 833 F. Supp. 2d 241, 253 (E.D.N.Y. 2011) (denying motion for release and finding "the[] alleged offenses, and the millions of dollars involved in the various frauds, constitute serious charges").

  ***The Weight of the Evidence.***  The weight of the evidence also supports detention.  As detailed above, the complaint alleges a clearcut fraud involving a significant amount of money. The defendant induced his victim to transfer to millions of dollars with promises of a loan and the safety of its money, but then spent the money to fund another Prime Capital client and on lavash personal expenditures.  What is more, the defendant knew this was illegal, as his contemporaneous text messages from early January 2024 illustrate:

| Sender | Recipient | Message |
| --- | --- | --- |
| Person-1 | Roglieri | Why can't it just be a bankruptcy? |
| Roglieri | Person-1 | Becuase I unused others money to fund deals |
| Roglieri | Person-1 | I already told you this |
| Person-1 | Roglieri | And that's illegal? |
| Roglieri | Person-1 | Yes |
| | | |
| Person-1 | Roglieri | It's a civil case it's not a criminal case |
| Roglieri | Person-1 | It will turn criminal as soon as they get into bank statements |
| Roglieri | Person-1 | They will bring in the Feds |

Ex. 4.  At bottom, the weight of the evidence is strong, and it shows that the defendant is willing

to engage in a largescale fraud while under the supervision of a court-appointed professional.

**The Nature and Seriousness of the Danger.** The nature and seriousness of the danger posed by the defendant strongly support detention. First, the defendant's threats of violence and obstruction warrant detention. "[O]bstruction poses a danger to the community," and where there is a risk that such activities will continue, pretrial detention may be appropriate. *United States v. Stein*, 2005 WL 8157371, at *2 (S.D.N.Y. Nov. 14, 2005); *see also United States v. Kwok*, 2023 WL 3027440, at *4 (S.D.N.Y. Apr. 20, 2023) (ordering detention based on, *inter alia*, defendant's likelihood of obstruction if released). In fact, the Second Circuit has noted that "obstruction of justice has been a traditional ground for pretrial detention by the courts." *LaFontaine*, 210 F.3d at 134. As detailed above, the defendant has threatened to harm judicial officers, agents, and others involved in bringing his misconduct to light. *See supra* at 3-4. While the defendant did not communicate those threats directly to the people affected, they are nonetheless extremely troubling given their specificity and tenor. Simply put, this Court should take the defendant at his word – he has suggested that he would "put a bullet" in the head of a prospective witness. The Court should not release the defendant so that he can make that plan come to fruition. Indeed, even though the defendant's known collection of firearms is currently secured with a third party, no set of conditions could truly prevent him from obtaining a firearm and attempting to harm someone.

Second, while a lesser concern than physical violence, "economic harm qualifies as a danger within the contemplation of the Bail Reform Act." *United States v. Persaud*, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007). In fact, courts have recognized that a defendant's economic danger to the community may be taken into consideration based on the defendant's propensity to commit further crimes, even if the resulting harm is solely economic. *See, e.g.*, *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979); *Kwok*, 2023 WL 3027440, at *6. Here, while the complaint details one instance where the defendant defrauded a prospective borrower, the government's ongoing investigation reveals many other victims and losses likely exceeding $75 million. That the defendant committed fraud against 1800 Park while Prime Capital was being overseen by a court-appointed interim trustee is even more concerning, because it shows that the defendant has no regard for judicial supervision.

**The History and Characteristics of the Defendant.** The defendant has no criminal convictions, and he has been compliant during all of his encounters with the FBI, so his history does not support detention. That said, his commission of a major fraud while under Bankruptcy Court supervision, his recent threat to murder an FBI agent, and his recent statement that "if I go down, everyone goes down," indicate that he cannot control himself and will seek to harm others, as his life continues to spiral downward.

\*       \*       \*

For these reasons, the defendant should be detained.

Page 8

Respectfully submitted,

CARLA B. FREEDMAN
United States Attorney

By: _____

Joshua R. Rosenthal
Michael Barnett
Assistant United States Attorneys
Bar Roll Nos. 700730 & & 519140

cc:    AFPD Matthew E. Trainor / AFPD Jeremy B. Sporn (by Email)
       Senior U.S.P.O. Amy Brancatelli (by Email)

# Exhibit 1

**Rosenthal, Joshua (USANYN)**



**From:** Christian Dribusch <cdribusch@chd-law.com>
**Sent:** Tuesday, May 28, 2024 11:16:35 AM
**To:** Vick, Jonathon Joseph (AL) (FBI) ▮▮▮▮▮▮▮▮>
**Subject:** [EXTERNAL EMAIL] -  Fw: Gun Collection

Per request, please see email chain below on Roglieri matter.

**Christian H. Dribusch**
**The Dribusch Law Firm**
p: 518.227.0026
e: cdribusch@chd-law.com
w: www.chd-law.com
a: 187 Wolf Road • Suite 300-020 • Albany • N.Y. 12205

**From:** john bush <finance12207@yahoo.com>
**Sent:** Friday, May 24, 2024 4:43 PM
**To:** Christian Dribusch <cdribusch@chd-law.com>
**Subject:** Re: Gun Collection

Christian.

I know I have rights to live off of. I liberally can't purchase food for my family this weekend.

I know I have rights to living expenses.

This is ludicrous

Sent from my iPhone

On May 24, 2024, at 2:29 PM, Christian Dribusch <cdribusch@chd-law.com> wrote:

I understand your situation, but you are directing your anger at the wrong person.  I am not
intentionally trying to harm you.  I have a statutory and fiduciary duty to secure the DIP

1

account.  It happens in every converted Chapter 11 case.  I thought we discussed this yesterday, so I apologize for the confusion.  Chris Dribusch

**Christian H. Dribusch**
**The Dribusch Law Firm**
p:  518.227.0026
e:  cdribusch@chd-law.com
w:  www.chd-law.com
a:  187 Wolf Road • Suite 300-020 • Albany • N.Y. 12205

---

**From:** john bush <finance12207@yahoo.com>
**Sent:** Friday, May 24, 2024 1:50 PM
**To:** Christian Dribusch <cdribusch@chd-law.com>
**Subject:** Re: Gun Collection

Christian I literally have no credit cards and no money for basic living expenses. Fucking cocksucker.
Sent from my iPhone

> On May 24, 2024, at 1:48 PM, Christian Dribusch <cdribusch@chd-law.com> wrote:
>
> I did.  You may be entitled to some of the funds, but only for post-petition earnings or assets acquired post-petition.   My understanding is that the account was primarily funded from bankruptcy estate assets (e.g., assets or proceeds which existed on the date of filing).   If you provide me with the information on what was funded into the DIP account with post-petition earnings or assets, then I can determine which funds belong to you and can promptly have them either released or turned over to you.  Sorry for the inconvenience.  Chris Dribusch
>
> **Christian H. Dribusch**
> **The Dribusch Law Firm**
> p:  518.227.0026
> e:  cdribusch@chd-law.com
> w:  www.chd-law.com
> a:  187 Wolf Road • Suite 300-020 • Albany • N.Y. 12205

---

**From:** john bush <finance12207@yahoo.com>
**Sent:** Friday, May 24, 2024 1:34 PM
**To:** Christian Dribusch <cdribusch@chd-law.com>
**Subject:** Re: Gun Collection

I will

Question did you put a freeze or hold on my dip account ?

Kris
Sent from my iPhone

On May 24, 2024, at 11:39 AM, Christian Dribusch <cdribusch@chd-law.com> wrote:


Could you let me know precisely which gun club is securing your guns.  Thanks.  Chris Dribusch

**Christian H. Dribusch**
**The Dribusch Law Firm**
p:  518.227.0026
e:  cdribusch@chd-law.com
w:  www.chd-law.com
a:  187 Wolf Road • Suite 300-020 • Albany • N.Y. 12205

# Exhibit 2



**Extraction Report** - Apple iOS Full File system



## Participants



Kris

Me (owner)

## Conversation - Instant Messages (3)



From: ▮▮▮▮ Kris
To: ▮▮▮▮ Me (owner)

I'm fucking gonna wack anybody that comes after me

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▮▮▮ Me | | | |

1/21/2024 4:37:24 PM(UTC+0)

Source Info:
00008110-
00114C3822C0401E_files_full.zip/private/var/mobile/Library/Biome/streams/restricted/App.Intent/local/7273
98605535127 : 0xFEBDC (Size: 1048576 bytes)



From: ▮▮▮▮ Kris
To: ▮▮▮▮ e (owner)

Fair game

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▮▮▮ Me | | | |

1/21/2024 4:37:55 PM(UTC+0)

Source Info:
00008110-
00114C3822C0401E_files_full.zip/private/var/mobile/Library/Biome/streams/restricted/App.Int
ent/local/727547875517699 : 0xDEB (Size: 1048576 bytes)

From: ▮▮▮▮▮▮ Kris
To: ▮▮▮▮▮▮ Me (owner)

You wanna come after me with guns you gonna get the same

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▮▮▮▮▮ Me | | | |

1/21/2024 4:38:10 PM(UTC+0)

Source Info:
00008110-
00114C3822C0401E_files_full.zip/private/var/mobile/Library/Biome/streams/restricted/App.Intent/local/72754787
5517699 : 0x1FA9 (Size: 1048576 bytes)

# Exhibit 3



**Extraction Report** - Apple iOS Full File system



## Participants



Kris

Me (owner)

## Conversation - Instant Messages (6)



From: ▮▮▮▮▮▮ Kris
To: ▮▮▮▮▮▮ me (owner)

I'm wearing down girl

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▮▮▮▮▮ Me | | | |

1/25/2024 11:02:28 PM(UTC+0)

Source Info:
00008110-
00114C3822C0401E_files_full.zip/private/var/mobile/Library/Biome/streams/restricted/App.Int
ent/local/727836424517501 : 0xE1803 (Size: 1048576 bytes)



From: ▮▮▮▮▮▮ Kris
To: ▮▮▮▮▮▮ e (owner)

I feel myself getting angry and vengeance to those that are doing this

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▮▮▮▮▮ Me | | | |

1/25/2024 11:03:00 PM(UTC+0)

Source Info:
00008110-
00114C3822C0401E_files_full.zip/private/var/mobile/Library/Biome/streams/restricted/App.Intent/local/727836424517501 :
0xE29DD (Size: 1048576 bytes)



From: ▮▮▮▮ Kris
To: ▮▮▮▮ Me (owner)

Including the attories, judge, receiver etc

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▮▮▮▮ Me | | | |

1/25/2024 11:03:20 PM(UTC+0)

Source Info:
00008110-
00114C3822C0401E_files_full.zip/private/var/mobile/Library/Biome/streams/restricted/App.Intent/lo
cal/727836424517501 : 0xE3B7F (Size: 1048576 bytes)



From: ▮▮▮▮ Kris
To: ▮▮▮▮ e (owner)

I don't really play by the rules

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▮▮▮▮ Me | | | |

1/25/2024 11:03:50 PM(UTC+0)

Source Info:
00008110-
00114C3822C0401E_files_full.zip/private/var/mobile/Library/Biome/streams/restricted/App.Int
ent/local/727836424517501 : 0xE4D11 (Size: 1048576 bytes)



From: ▮▮▮▮ Kris
To: ▮▮▮▮ Me (owner)

Never have and never will

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▮▮▮▮ Me | | | |

1/25/2024 11:03:58 PM(UTC+0)

Source Info:
00008110-
00114C3822C0401E_files_full.zip/private/var/mobile/Library/Biome/streams/restricted/App.Int
ent/local/727836424517501 : 0xE5E8C (Size: 1048576 bytes)



From: ▮▮▮▮ Kris
To: ▮▮▮▮ e (owner)

And that's dangerous as I feel myself getting to that point with all involved against me

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▮▮▮▮ Me | | | |

1/25/2024 11:04:23 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/Biome/streams/restricted/App.Intent/local/727836424517501 :
0xE708B (Size: 1048576 bytes)

# Exhibit 4



**Cellebrite**
www.cellebrite.com

**Extraction Report** - Apple iOS Full File system

## Participants



Me* (owner)

Kris*

## Conversation - Instant Messages (16)



From: ▇▇▇▇ Me (owner)
To: ▇▇▇ ris

Can't you just keep working on those companies?

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▇▇▇▇ Kris | 1/4/2024 11:20:42 PM(UTC+0) | | |

**Status:** Sent

1/4/2024 11:20:42 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db : 0x528F310
(Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal : 0xE6FAA
(Table: message; Size: 1128912 bytes)



From: ▇▇▇▇ Me (owner)
To: ▇▇▇ Kris

I know it might be hard at first, but look what you built this up to beat from nothing

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▇▇▇▇ Kris | 1/4/2024 11:20:56 PM(UTC+0) | | |

**Status:** Sent

1/4/2024 11:20:56 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db : 0x5290F8D (Table: message, handle; Size:
121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal : 0xE6FAA (Table: message; Size: 1128912
bytes)



From: ███████ Kris
To: ███████ Me (owner)

Yea I can but not when I'm in fucking prison

| Participant | | Delivered | Read | Played |
|---|---|---|---|---|
| ███████ | Me | | 1/4/2024 11:20:56 PM(UTC +0) | |

**Status:** Read

1/4/2024 11:20:56 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db : 0x5290CBC
(Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal : 0xE6FAA
(Table: message; Size: 1128912 bytes)



From: ███████ Me (owner)
To: ███████ Kris

Why do you think that's gonna happen?

| Participant | | Delivered | Read | Played |
|---|---|---|---|---|
| ███████ | Kris | 1/4/2024 11:21:09 PM(UTC+0) | | |

**Status:** Sent

1/4/2024 11:21:09 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db :
0x5290A7F (Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal :
0xE6FAA (Table: message; Size: 1128912 bytes)

From: ███████ Me (owner)
To: ███████ Kris

Why can't it just be a bankruptcy?

| Participant | | Delivered | Read | Played |
|---|---|---|---|---|
| ███████ | Kris | 1/4/2024 11:21:19 PM(UTC+0) | | |

**Status:** Sent

1/4/2024 11:21:19 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db :
0x5290817 (Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal :
0xE6FAA (Table: message; Size: 1128912 bytes)



From: ▓▓▓▓▓ Kris
To: ▓▓▓▓▓ Me (owner)

Becuase I unused others money to fund deals

| Participant | | Delivered | Read | Played |
|---|---|---|---|---|
| ▓▓▓▓ | Me | | 1/4/2024 11:21:47 PM(UTC +0) | |

Status: Read

1/4/2024 11:21:47 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db : 0x52905AB
(Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal :
0xE6FAA (Table: message; Size: 1128912 bytes)



From: ▓▓▓▓▓ Kris
To: ▓▓▓▓▓ Me (owner)

I already told you this

| Participant | | Delivered | Read | Played |
|---|---|---|---|---|
| ▓▓▓▓ | Me | | 1/4/2024 11:21:53 PM(UTC +0) | |

Status: Read

1/4/2024 11:21:53 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db :
0x529036A (Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal :
0xE6FAA (Table: message; Size: 1128912 bytes)



From: ▓▓▓▓▓ Me (owner)
To: ▓▓▓▓▓ ris

And that's illegal?

| Participant | | Delivered | Read | Played |
|---|---|---|---|---|
| ▓▓▓▓ | Kris | 1/4/2024 11:22:02 PM(UTC+0) | | |

Status: Sent

1/4/2024 11:22:02 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db :
0x5291F8D (Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal :
0xE6FAA (Table: message; Size: 1128912 bytes)



From: ▆▆▆▆ Kris
To: ▆▆▆▆ Me (owner)

Yes

| Participant | | Delivered | Read | Played |
|---|---|---|---|---|
| ▆▆▆▆ | Me | | 1/4/2024 11:22:15 PM(UTC+0) | |

Status: Read

1/4/2024 11:22:15 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db :
0x5291D3F (Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal :
0xE6FAA (Table: message; Size: 1128912 bytes)



From: ▆▆▆▆ Me (owner)
To: ▆▆▆▆ Kris

How bad . I mean, what's the worst you do a couple years who cares

| Participant | | Delivered | Read | Played |
|---|---|---|---|---|
| ▆▆▆▆ | Kris | 1/4/2024 11:22:36 PM(UTC+0) | | |

Status: Sent

1/4/2024 11:22:34 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db : 0x5291B58 (Table: message,
handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal : 0xE6FAA (Table: message;
Size: 1128912 bytes)



From: ▆▆▆▆ Me (owner)
To: ▆▆▆▆ Kris

You have your family

| Participant | | Delivered | Read | Played |
|---|---|---|---|---|
| ▆▆▆▆ | Kris | 1/4/2024 11:22:45 PM(UTC+0) | | |

Status: Sent

1/4/2024 11:22:45 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db :
0x5291B83 (Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal :
0xE6FAA (Table: message; Size: 1128912 bytes)



From: ▓▓▓▓▓ | Me (owner)
To: ▓▓▓▓▓ | Kris

**This whole family will support you through this**

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▓▓▓▓ Kris | 1/4/2024 11:24:30 PM(UTC+0) | | |

**Status:** Sent

1/4/2024 11:24:30 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db : 0x5291671
(Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal : 0xE6FAA
(Table: message; Size: 1128912 bytes)



From: ▓▓▓▓▓ | Me (owner)
To: ▓▓▓▓▓ | Kris

**It's a civil case it's not a criminal case**

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▓▓▓▓ Kris | 1/4/2024 11:25:52 PM(UTC+0) | | |

**Status:** Sent

1/4/2024 11:25:52 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db :
0x52913F9 (Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal :
0xE6FAA (Table: message; Size: 1128912 bytes)



From: ▓▓▓▓▓ | Kris
To: ▓▓▓▓▓ | Me (owner)

**It will turn criminal as soon as they get into bank statements**

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▓▓▓▓ Me | | 1/4/2024 11:27:42 PM(UTC+0) | |

**Status:** Read

1/4/2024 11:27:09 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db : 0x5292F83 (Table: message,
handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal : 0xE6FAA (Table: message;
Size: 1128912 bytes)



From: ███████ Kris
To: ███████ Me (owner)

**They will bring in the Feds**

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ███████ Me | | 1/4/2024 11:27:42 PM(UTC +0) | |

**Status:** Read

1/4/2024 11:27:20 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db :
0x5292D1B (Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal :
0xE6FAA (Table: message; Size: 1128912 bytes)



From: ███████ Kris
To: ███████ Me (owner)

**Once they figure it out**

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ███████ Me | | 1/4/2024 11:27:42 PM(UTC +0) | |

**Status:** Read

1/4/2024 11:27:27 PM(UTC+0)

Source Info:
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db :
0x5292AFA (Table: message, handle; Size: 121409536 bytes)
00008110-00114C3822C0401E_files_full.zip/private/var/mobile/Library/SMS/sms.db-wal :
0xE6FAA (Table: message; Size: 1128912 bytes)