# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# FOR THE NORTHERN DISTRICT OF NEW YORK



Syracuse Office

4 Clinton Square
3ᴿᴰ FLOOR
SYRACUSE, NY 13202
(315) 701-0080
(315) 701-0081 FAX

Lisa Peebles
Federal Public Defender

Albany Office

54 State Street
STE 310
ALBANY, NY 12207
(518) 436-1850
FAX (518) 436-1780

Paul Evangelista
First Assistant

July 12, 2024

Hon. Christian F. Hummel, U.S. Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 441
Albany, NY 12207

  re: **United States v. Kris Roglieri**
    **Case No. 24-mj-261 (CFH)**

Dear Judge Hummel:

  Mr. Roglieri requests a new detention hearing be scheduled for the Court to consider

information that was not available to the defense at the time of the detention hearing that was held

on June 3, 2024.

### 18 U.S.C. §3142(g) Factors

1. The nature and circumstances of the offense charged: Wire Fraud 18 U.S.C. § 1343.

   The charged conduct is not a crime of violence, not a violation of section 1591, not a
   Federal Crime of Terrorism, does not involve a minor victim or a controlled substance,
   firearm, explosive or destructive device.

2. The Weight of the evidence against the person:

   Unknown as very little discovery has been provided to the defense.

3. The history and characteristics of Mr. Roglieri:

Prior to and in spite of the allegations in this case, Mr. Roglieri continues to have a strong reputation in the community as demonstrated by the attached letters of support provided by family, & friends. He is in good physical health, and while he is experiencing some stress and anxiety do to all the civil and now criminal litigation based on the same set of financial transactions, it has not resulted in propensity to violent action.

He shares custody of his two children with his estranged wife and he would never abandon them. When his Chapter 11 Reorganization was converted to a Chapter 7 Liquidation Mr. Roglieri lost access to all financial resources.

Mr. Roglieri is a lifelong resident of the community, with no prior criminal convictions and absolutely no history of violence whatsoever. He has no record of failing to appear at court proceedings. He does have a history of charitable work, holding a regular fundraising event for Albany Medical Center's Children's Hospital.

4. the nature and seriousness of the danger to any person or the community that would be posed by Mr. Roglieri's release.

Mr. Roglieri poses no serious danger to any specific person or to the community at large, the government's claims notwithstanding. *See* Letter from USA as to Kris Roglieri, Dkt#6, hereinafter "Govt Letter." The allegations contained in the government's letter, in addition to the contents of the Sealed Document, Dkt #16, on the surface are certainly alarming, but the statements were made in January of 2024. At that time Mr. Roglieri was aware that the Federal government had opened a criminal investigation into the business transactions which has already spawned extensive civil litigation. He owned several firearms which were in his home when

the FBI executed their search.  If Mr. Roglieri truly had any intention on following through on the alleged threats, then that was certainly the time to do it.  However, Mr. Roglieri was polite and cooperative with the FBI agents.  He did nothing to interfere with their search let alone attempt to commit an act of violence against anyone.

**Sixth Amendment right to consult with counsel.**

Based on discussions with the government There is a very significant amount of discovery materials, so much so that attempts to consolidate and transmit it to the defense have been frustrated by technical issues.  Review of a voluminous amount of detailed business records will take a prolonged time under the best of circumstances.  Mr. Roglieri's continued incarceration will only exacerbate the difficulty of reviewing and discussing the discovery materials due to the restrictive visitation schedule whereas if he were released on conditions he would be able to meet with counsel after hours or on weekends to collaborate on how various pieces of evidence impact the defense.  A defendant's ability to effectively communicate with his counsel is an essential element to his sixth amendment rights.  "Indeed, one of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense." *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).  Not only will pretrial incarceration impair Mr. Roglieri's ability to collaborate with counsel either in preparation for trial or possibly a plea bargain, but the interruptions and artificially shortened visit times will necessarily prolong the pretrial period.

"We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often

means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense.  Imposing those consequences on anyone who has not yet been convicted is serious." *Barker v. Wingo*, 407 U.S. 514, 532–33, 92 S. Ct. 2182, 2193, 33 L. Ed. 2d 101 (1972)

The defense understands the Court's concerns regarding the statements outlined in the Govt Letter, which on their face are quite alarming.  However, as events progressed it has become abundantly clear that Mr. Roglieri had absolutely no intention of following through on any of the threats he allegedly made.  It is clear that he was merely venting his frustrations about the mounting litigation spiraling out of a failed business transaction.  The attached letters from those who know him best attest to his character and lack of violent tendencies.

Mr. Roglieri is not a risk of flight for many reasons.  First, he could never bear to be away from his children for a prolonged period of time, let alone the rest of his life while on the run. Second is that he has absolutely no access to any assets that he would need to successfully flee from the pending criminal prosecution by the Federal Government.  When he did have access to substantial assets he made no attempt to flee.  Finally, he has strong ties to the Capital Region and has no desire to live anywhere else.

As noted above, Mr. Roglieri is also not a danger to the community at large or to any particular individuals.  If he had *any* inclination to engage in any form of violence he would have acted well before his arrest in May of 2024.  He is willing to surrender his passport.

The Pretrial Services report, Dkt#7, cites the following reasons against release:

**Assessment of Nonappearance:**

1. Offense Charged (involving a significant amount of money)

   Congress established factors related to the nature and circumstances of the charged offense, *see* 18 U.S.C.3142(g)(1), and this is not one of them.

2. Employment (current employment may be related to present offense and not suitable for supervision)

   Mr. Roglieri proposes to live with his girlfriend in Poughkeepsie under home confinement.  It is unclear at this stage if the ongoing bankruptcy proceedings preclude his ability to earn income anyway.

3. Pending Charges (Queensbury Town Court)

   The firearm charges are the least of his worries.  As noted above, Mr. Roglieri lacks the ability (let alone the inclination) to flee Federal Felony charges.

4. Ties to a Foreign Country (Unknown International Travel/Ties)

   This is the weakest argument for a risk of flight.  Based on this argument it appears that any travel outside of the US at any time creates a risk of flight.  This risk is easily mitigated by electronic monitoring.

**Assessment of Danger:**

1. Safety Concerns for the Community or a Specific Individual

   This relates exclusively to the Govt Letter addressed above.

There are conditions that the Court could impose that would both ensure that Mr. Roglieri appears in court as required and will not be a danger to the community. His girlfriend, Linda Oliver has secured a house in Poughkeepsie, NY where Mr. Roglieri could reside on home confinement with electronic location monitoring. She works primarily in NYC which is why she sought out housing closer. This would allow him to collaborate with his legal counsel which will provide the best possible outcome in his case. Mr. Roglieri can assist in his own defense by identifying and thereby preserving items currently in the possession of the bankruptcy trustees that contain evidence useful in his defense. Even on restrictions he will be able to meet more often and for longer periods of time with his legal counsel without having to deal with the institutional regulations that are often necessary to allow correctional facilities to operate properly.

Sincerely,

Matthew E. Trainor
Assistant Federal Public Defender, Albany Office
Bar Roll # 105643
matthew_trainor@fd.org

cc:    AUSA Joshua Rosenthal – via ECF
       AUSA Michael Barnett – via ECF
       USPO Amy Brancatelli – via email

June 25, 2024

Honorable Christian F. Hummel
United States Magistrate Judge for the Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207

Dear Judge Hummel,

      I am writing this in regards to Kris Roglieri, who is currently incarcerated. Kris and I were in a very loving relationship between the years of 2004-2008. Early on in the relationship I realized how important family is to him. That's why he introduced me to them so quickly. We spent so much time with his family. He loved it, and I loved it as well. To this day I am still just as close with them.

      For years Kris worked at the ARC taking care of mentally challenged individuals in a home. He loved his job. He would always tell me about them. It brought him joy to help them. And those people were lucky to have Kris as well.

      Kris would do anything for anyone. He would go out of his way to help put grocery bags in elderly people's trunks for them. He would be the 1st one to offer his seat if anyone needed it. He's just a kind person.

      Through the entirety of our relationship, I have never seen Kris become violent. There is absolutely no history of any domestic violence threats to myself or anyone else. He certainly would not be a threat to the community.

      I'm writing this letter in hopes that you would respectfully consider a release for Kris. Thank you for your time.

Respectfully,

Amy Pugsley

DR. JOSEPH M. ROGLIERI

SCHENECTADY, NY 12306

June 24, 2024

Honorable Christian F. Hummel

United States Magistrate Judge for the Northern District of New York

James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207

Dear Judge Hummel,

I am writing on behalf of and support of my brother Kris D. Roglieri, who is currently incarcerated. I respectfully ask for consideration for release of Kris, as he poses no threat to himself nor members of the community. As a board-certified practicing physician in Internal Medicine and Nephrology in the community for nearly 20 years, I have had numerous encounters with many patients that suffered from varying degrees of mental illness, depression, and anxiety. I can assure you Kris has never exhibited any of these tendencies.

I have known Kris since birth and the entire duration of his 44 years of life. Kris and I have a close relationship with similar beliefs in God, country, and family. Growing up, Kris had a strong bond with his family. He exemplifies the core fundamentals of the strong upbringing our parents instilled upon us. Kris has not had any impulsive or violent tendencies. He has no criminal or violent record throughout his youth as well as into adulthood.

I have been with Kris during the best and worst of times. He is a man of reason and looks for a solution to whatever problems arise. I have witnessed Kris grow into a family man and truly lives for his children and support of his family. As a member of Redeemer Lutheran Church in Kingston, NY and later Lutheran Church of Shepard in Queensbury, NY, Kris always has Christ as a focal point in his life and shares these beliefs with his family.

As Kris established his companies, he carved time out for community service. He never forgot where his roots came from. Our mother is an immigrant from post-WWII Latvia at the age of 10. Our father was a decorated Korean war veteran, serving his country in the Korean War in the Battle of Chosin Reservoir in the United States Marine Corps. Kris gives back to the community through multiple charitable contributions. He prides himself with the ability to donate 1,000 turkeys at Thanksgiving each year to those in need. During COVID 19 pandemic, he arranged to cater and serve dinner to the entire staff of Samaritan Hospital in Troy, NY in appreciation for



DR. JOSEPH M. ROGLIERI

SCHENECTADY, NY 12306

the care the medical community was providing during the pandemic.  He supports his children as they pursue various extra-curricular sports and activities including skiing and wrestling.

Kris has been incarcerated for over 3 weeks and has not seen his children during this time. The emotional suffering of his children is evident and should be taken into consideration. As a father myself, I cannot imagine the toll of not seeing or being a part of their daily lives.

Simply put, there is no risk/zero risk of threat of self-harm or to others from my brother. Kris is a family man, an established philanthropic member of the community, both socially and professionally. He has never sought or was recommended for counseling or remediation.  I have seen Kris react and handle the most difficult times with a voice of reason. In closing, I kindly and respectfully ask for consideration in the release my brother Kris Roglieri.

Respectfully,

Joseph M. Roglieri, DO, MSc

06/06/2024

Dear, Honorable, U.S. Magistrate Judge Christian F. Hummel,

I am writing to you with a heavy heart, pleading for mercy on behalf of Kris Roglieri, a man who has made a grave mistake but who also holds an invaluable role in the lives of his children. As a neighbor who has witnessed firsthand the immense turmoil this family has endured since January, I implore you to consider the profound impact that Kris Roglieri 's absence would have on his family, particularly his young teenage son and daughter.

I vividly recall the distressing scene of armed agents escorting the children from their home at dawn, their faces etched with fear and confusion, while their father was arrested at gunpoint. The image of these half-dressed, shivering children being led down the driveway by armed agents in 40-degree weather remains seared in my memory. Such a traumatic experience would be overwhelming for adults, let alone young children who rely on their father for stability and security.

The stages of grief, as outlined by renowned psychiatrist Elisabeth Kübler-Ross, illustrate the tumultuous journey of emotions that individuals undergo when faced with loss: denial, anger, bargaining, depression, and acceptance. I'm sure everyone involved is in some stage of grief at the moment. For adolescents, especially those who are navigating the delicate transition from childhood to adulthood, the absence of a father figure can amplify these emotions and hinder their ability to cope effectively.

Statistics reveal that children who lose a parent, particularly a father, are at an increased risk of experiencing emotional distress, behavioral issues, and academic struggles. The absence of paternal guidance and support can leave a void that is challenging to fill, impacting every aspect of their lives.

Furthermore, while acknowledging the severity of Kris Roglieri 's actions, I urge the court to also consider the broader issue of financial crimes and the need for reform. Many individuals who commit such crimes do so out of desperation or a misguided belief that they have no other recourse. Instead of solely punitive measures, there is an opportunity for rehabilitation and restitution.

One way to expedite restitution to victims while also allowing Kris Roglieri to provide for his family is to set up a trust, much like VAERS, where every real estate deal or loan would pay a flat fee or percentage to be put into an interest-bearing trust that compounds and pays victims annually. A percentage of the $ that has been recouped through seizures could be put into the trust to help pay back debts. Even at 8% interest or less, victims would be paid faster and more $ than simply selling his assets and throwing him in prison. This approach not only addresses the immediate financial needs of the victims in all financial cases but also promotes accountability and facilitates Kris Roglieri's reintegration into society.

Additionally, I urge the court to consider allowing Kris Roglieri to secure his possessions and ensure they are sold for the highest value possible. By holding him in jail, he is

unable to maintain his property, leaving it vulnerable to theft and further loss. Allowing him to take measures to protect his assets would not only serve his interests but also benefit the victims by maximizing the potential restitution.

In considering the fate of Kris Roglieri, I cannot help but reflect on the case of Bernie Madoff and the aftermath of his arrest. While Madoff's crimes were undoubtedly egregious, his sons suffered immensely in the wake of his actions, enduring public scrutiny, loss of reputation, and profound emotional turmoil. The ripple effects of his crimes extended far beyond his immediate victims, touching the lives of his family in irreversible ways.

Your Honor, I humbly ask you to consider the long-term well-being of Kris Roglieri's children as you deliberate on his case. While accountability is essential, so too is compassion and understanding for the human condition. I believe that Kris Roglieri is capable of redemption and that with the appropriate support and guidance, he can become a positive influence in the lives of his children once again.

Please, Your Honor, spare Kris Roglieri from a fate that would further devastate his family and allow him the opportunity to seek rehabilitation and reconciliation. The future of his children hangs in the balance, and your decision has the power to shape their lives for years to come.

Thank you for your time and consideration.

Sincerely,

Moriah Mathis

## Affirmation

I, **Linda Oliver,** affirms the following under penalties of perjury:

1. I have been the girlfriend of Kris Roglieri since September of 2023 and lived with him in his home located in Queensbury NY. I have been asked by the Federal Public Defender to submit this affirmation and to appear at any future hearings concerning detention, and I have agreed to do both.

2. During the time that I lived with Mr. Roglieri I witnessed him withstand the pressures of dealing with an involuntary bankruptcy proceeding against him, which was dismissed, a separate bankruptcy proceeding against him which his attorneys started for him, the criminal investigation which started with a search of his home and seizure of his car collection, and then the chapter 7 bankruptcy which resulted in the appointment of a trustee who has seized his house and all his possessions.

3. In order to assist him in being released I have rented a house in Poughkeepsie New York located at ▓▓▓▓▓▓▓▓▓▓▓ and when he is released it has been my intention to have him move into that home, which is available now for occupancy.

4. I have a full-time job in NYC which I go to daily and I am aware that a proposal will be made by his attorney to the court that will require that he be confined to my home and wear a bracelet and that he will not be able to work or do anything other than visit his attorneys or go to court. I am able and willing to bear this responsibility.

5. I am aware that the court has detained Mr. Roglieri due to his text messages ▓▓▓▓▓ ▓▓ and as a result of ▓▓▓▓▓▓▓▓▓ that he threatened agents' lives. In the period September 2023 to the present I have never heard Mr. Roglieri make a statement that threatened anyone or was anything more than his being frustrated about his current situation. During the period of time up to arrest he worked every day at his office in Albany or at home, and was hopeful that he could address the criminal allegations against him. the bankruptcy proceedings in my opinion created a stressful diversion from the task at hand, the criminal case, and it was those proceedings that caused him great anxiety because he believed they were unnecessary and improperly started. In my presence he has never been violent, or threatening, or self-destructive. He was angry that all of his assets were taken from him leaving him penniless. He could not even afford to hire an attorney to represent him in the bankruptcy case known as a Chapter 7. He tried to call over 20 attorneys and the publicity of his case and his lack of funds prevented him from retaining one. Naturally, he was angered over these events. But I do not believe that he is capable of carrying out any threats or doing violence to anyone. It is not in his character. It should be stressed that he built up his businesses and his wealth over a 20 year period and was respected in his industry. I have never heard one bad thing about him other than what ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ wrote in ▓▓ affidavit.

Dated: June 25, 2024

     Albany, New York

                                        Linda Oliver (Jun 25, 2024 10:05 EDT)
                                        Linda Oliver

# Affirmation of Linda Oliver

Final Audit Report                                                                      2024-06-25

| | |
|---|---|
| Created: | 2024-06-25 |
| By: | Dreyer Boyajian (jfereday@dblawny.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAASsWW5nzyeCu3tQ_ULqxKYMxJ7Nlv2XBn |

## "Affirmation of Linda Oliver" History

📄 Document created by Dreyer Boyajian (jfereday@dblawny.com)
2024-06-25 - 2:03:58 PM GMT

📧 Document emailed to Linda Oliver (lindaoliverofficial@gmail.com) for signature
2024-06-25 - 2:04:02 PM GMT

📄 Email viewed by Linda Oliver (lindaoliverofficial@gmail.com)
2024-06-25 - 2:04:13 PM GMT

🖋 Document e-signed by Linda Oliver (lindaoliverofficial@gmail.com)
Signature Date: 2024-06-25 - 2:05:14 PM GMT - Time Source: server

✓ Agreement completed.
2024-06-25 - 2:05:14 PM GMT

🅰 **Adobe Acrobat Sign**

**Attorney Affirmation**

**William J. Dreyer,** an attorney duly  licensed in the State of New York affirms the following under penalties of perjury:

1. I am an attorney at law duly admitted to practice in the State of New York and in all United States District Courts in the Second Circuit and in the Second Circuit Court of Appeals.

2. I make this affirmation at the request of the Federal Public Defender in connection with an application made on behalf of Kris Roglieri for further relief under the Bail Reform Act. Mr. Roglieri seeks to be released from detention under circumstances and with conditions reasonably assuring his continued appearance in court and at trial. Specifically, the Federal Public Defender has asked that I address certain aspects of Mr. Roglieri's mental health and demeanor during the time that I  represented him in a pending federal criminal investigation in February and March 2024 and before his arrest.

3. I first met with Mr. Roglieri on or about February 6, 2024, and met with him on several occasions thereafter. The meetings took place at my office or in bankruptcy court proceedings held in different locations, including my office, the Leo O'Brien Federal Building, the U.S. Bankruptcy Court. During these appearances, Mr. Roglieri was called upon to answer questions of the United States Trustee, the appointed Chapter 11 Trustee, and creditors' attorneys.

4. He attended every meeting and court conference that he was required to attend. He was never late, and he never asked for a postponement.

5. During these times, he showed no signs of mental distress or anxiety, despite the heavy burden he faced in bankruptcy court and in the pending criminal investigation. I am familiar

with the information that the Federal Public Defender will present to the court and which the government will or has used in the past to support detention. Mr. Roglieri was ready to defend himself in the criminal case after the bankruptcy case was concluded. He foresaw a time when we could present to the U.S. Attorney the factual background of the financial transactions which the government claimed were part of a fraudulent scheme to defraud others. Mr. Roglieri in my view had a good faith belief that the presentation we were preparing was meritorious. He showed no signs of mental deterioration or hopelessness, and no signs of suicidal thoughts or thoughts of self-destruction.

6.  The unfortunate texts he wrote ███████ which have been construed as threats against others were a surprise to me. He has no criminal background and I never heard him voice one adverse comment about an agent or a government official. He frequently vented about the injustice of losing all of his assets.

7.  They were words, and while I realize that words in text messages are important to a deciding magistrate or court, the point is he never took one step to harm anyone and never took one step to harm himself.  And during this same time he was functioning at his office or in court proceedings.  He has denied making statements to █████████ about agents and others that ██ reported in ██ affidavit.

8.  During most of this time, he was working in his office in downtown Albany and working with his bankruptcy counsel to propose an orderly process to sell his high-end cars. In fact we arranged with the FBI and the United States Attorney an orderly transfer of several vehicles that were located on the property of Mr. Roglieri and not only was he cooperative in arranging for the FBI to enter his premises and to meet with his designated agent who would assist in loading the cars, but he stayed off the premises during the time the FBI was

working on collecting the cars. He never showed signs of uncooperativeness and the seizure was smooth and orderly. Mr. Roglieri stayed in his office and agreed that if he was needed he would drive to the site of the seizure if requested. In addition, he was courteous to the FBI during the morning of his arrest.

9. At all times he was courteous to the bankruptcy personnel including Trustees, the Receiver, and the Court and his courtesy and good behavior belie the government's claims made at the detention hearing.

10. I have conferred with his brother, Joseph Roglieri, a doctor, and he knows of no facts or credible evidence that would suggest that Mr. Roglieri was or is a danger to the community or to himself. During this same time period, he had two other attorneys representing him, Pieter Van Tol and Joseph Barsalona, including three attorneys in Mr. Barsalona's office who had frequent contact with him. Not one of those attorneys ever expressed concern about Mr. Roglieri's mental health and never considered him to be violent or a danger to the community.

Dated: June 24, 2024
      Albany, New York

William J. Dreyer, Esq.
Dreyer Boyajian, LLP
75 Columbia Street
Albany, New York 12210
(518) 463-7784
wdreyer@dblawny.com

Mr. Trainor,

My name is Michael Szabo,  a cousin of Kris Roglieri. I am hoping this communication can reach the Federal Judge presiding over Kris's case.

I have known Kris his entire life  to be a good family man. I keep in touch with Kris's mother,  Brigida and grandmother, Mrs Polly.  Kris has organized several fund raising events and donated money to Albany children's hospital.

I have never known Kris to be a threat to himself or others. Comments that were made indirectly I'm sure we're at a time if extreme stress.

I am asking the court to consider releasing Kris and allowing him the opportunity to fairly work with his attorney on his criminal matters. Kris will not be able to effectively work with his attorney on his case while incarcerated.

Again,   I ask the court to release Kris Roglieri while his criminal case unfolds.


Michael Szabo
████████████
Poughkeepsie, NY 12603
████████