

**United States Department of Justice**

*United States Attorney*
*Northern District of New York*

*445 Broadway, Room 218*          *Tel.: (518) 431-0247*
*James T. Foley U.S. Courthouse*   *Fax: (518) 431-0249*
*Albany, New York 12207-2924*

July 23, 2024

**BY ECF // FILED WITH REDACTIONS**

Hon. Christian F. Hummel
U.S. Magistrate Judge
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207

      RE:    **United States v. Kris Roglieri**, No. 1:24-MJ-261 (CFH)

Dear Judge Hummel:

    We respectfully submit this letter in opposition to the defendant's motion "for a new detention hearing" based on information that was purportedly "not available to the defense" at the time of the detention hearing that Your Honor held on June 3, 2024 (Dkt. # 17). Though the defendant does not identify the provision of law under which he is moving, motions to reopen a detention hearing pursuant to 18 U.S.C. § 3142(f) require the movant to demonstrate that the new information was (1) unavailable at the time of the original detention hearing; and (2) would have been material to the court's original detention decision. The defendant falls far short of meeting the exacting standard that he elides. All of the information that he now proffers was already available to the defense in June and should not, in any event, cause the Court to revisit its earlier detention decision. If anything, the only truly new information available to the Court reinforces the reasons for why detention is required. As explained in more detail below, the motion should be denied without a hearing.

## BACKGROUND

    On May 28, 2024, the government obtained the criminal complaint in this proceeding charging the defendant with one count of wire fraud. In sum, the complaint alleges that the defendant defrauded a prospective borrower of a $5 million Interest Credit Account (ICA) payment while an involuntary bankruptcy proceeding concerning one of his companies, Prime Capital Ventures, LLC, was pending in this District. *See* Dkt. # 1. The complaint details a brazen scheme in which the defendant promised to keep this ICA payment in a separate and distinct account, but immediately broke that promise by using the money on, among other things, a financial obligation owed to another Prime Capital client and the defendant's personal expenses, including a $84,000 watch and $101,000 for private air travel. *See id.*

Page 2

The defendant was arrested and made his initial appearance before Your Honor on May 31, 2024. *See, e.g.*, May 31, 2024 Tr. at 1-2.[1] At the initial appearance, the government sought a detention hearing under 18 U.S.C. § 3142(f)(2)(B) after the preparation of a pretrial services report, based on the serious risk that the defendant would obstruct justice and threaten prospective witnesses if released. *See id.* at 5-7. The defense opposed this request, arguing for the defendant's immediate release, but the Court agreed that a detention hearing was merited. *See id.* After initially proposing to schedule the hearing for June 4, 2024, the Court scheduled it for June 3, 2024. *See id.* at 7-8. In discussing scheduling, the government noted that it was "certainly amenable" to scheduling the hearing "to accommodate [Your Honor] or defense counsel," *id.* at 7, and defense counsel did not object to the June 3, 2024 hearing date, *id.* at 8.

On the morning of June 2, 2024, the government filed a letter explaining the reasons why the defendant should be detained pending trial. *See* Dkt. # 6-1. The government described the seriousness of the defendant's offense, a multi-million-dollar fraud scheme that appears to involve many victims. *See id.* at 6-7. The government pointed to chilling text messages in which the defendant said he would "wack" and seek "vengeance" against officials and attorneys involved in his various legal proceedings as well as his oral comments that he would kill an FBI agent. *See id.* at 3-4, 7. The government also attached text messages demonstrating the defendant's guilt – messages where the defendant recognized that his conduct was "illegal" and would result in criminal charges by "the Feds." *Id.* at 6 & Ex. 4.

At the detention hearing, defense counsel argued vigorously against detention. June 3, 2024 Tr. at 5-15. Defense counsel downplayed the significance of the defendant's text messages, suggesting that they were the product of frustration and nothing "more than idle talk, idle chatter, venting, blowing off steam, whatever you want to call it." *Id.* at 14. Defense counsel denied the defendant's oral comments as invented by a witness with "an ax to grind." *Id.* at 12. Defense counsel raised the defendant's lack of a criminal record and suggested that if the defendant truly planned to act on his threats, he would have done so well before his arrest. *See, e.g.*, *id.* at 8, 10, 13. Defense counsel also stressed the defendant's "philanthropic giving," closeness to his children, and ties to the community. *Id.* at 6-7.

The Court carefully considered the defendant's arguments and ultimately found that it could not set conditions that would reasonably assure the safety of the community. *See id.* at 17-20. In rendering its decision, the Court noted "substantial evidence" supporting the allegation that the defendant engaged in a large fraud as well as the "grave concern" it felt as a result of the defendant's text messages and oral statements discussing harming people taking part in the numerous legal proceedings involving the defendant. *Id.* at 18. The Court reasoned, "[a]ll of those comments, text messages, and those allegations set forth in the [government]'s letter are deeply disturbing to the Court" and [t]here's nothing I can do with respect to setting conditions that would address those." *Id.* at 19. The Court then noted, "[i]f I put him on electronic monitoring and GPS and he's determined to follow those on those alleged threats, I have no ability to stop him from doing so, and neither would pretrial services." *Id.* At the end of the hearing, defense counsel said the defense might seek to "obtain a risk or threat assessment from someone who can sit down with

---

[1] Pursuant to this District's transcript policy, copies of the two transcripts cited herein have not been attached as exhibits because they are not yet publicly posted to ECF. Copies of the transcripts have been sent to the Court's Chambers, the U.S. Probation Office, and the defense.

Mr. Roglieri and get a better sense of who he is and where he's coming from" as a basis for release. *Id.* at 20. The Court responded: "If you can come up with such a plan, you can submit it to the Court[,] I'll give the government a chance to respond to it. I'll determine whether or not that is a sufficient basis for a further hearing. So I'm not saying I will or will not do it until I see the plan . . . ." *Id.*

## LEGAL STANDARD

Under the Bail Reform Act, a detention hearing

> may be reopened . . . at any time before trial *if the judicial officer finds that information exists* [1] *that was not known to the movant at the time of the hearing and* [2] *that has a material bearing on the issue* whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f) (emphasis added). As the statute makes clear, a detention hearing should not be reopened because of information that was available to the defendant at the time of the hearing. *See, e.g.*, *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989). Thus, "[a]ffidavits and letters from the defendant's family and friends are insufficient to warrant reconsideration." *United States v. Lewis*, 2016 WL 6902198, at *2 (S.D.N.Y. Nov. 16, 2016) (citing *United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *Hare*, 873 F.2d at 799). In other words, the defendant must show "truly changed circumstances, something unexpected, or a significant event" and not just "his own evaluation of his character or the strength of the case against him." *United States v. Rodriguez*, 2012 WL 6690197, at *8 (W.D.N.Y. Dec. 21, 2012) (internal quotation omitted).

## ARGUMENT

### I.    The Defendant Has Not Supplied New Information

The motion stumbles out of the gate because the defendant does not even attempt to grapple with the relevant legal standard. The Bail Reform Act requires a showing that the additional information is either new or could not have been introduced at the detention hearing. *See* 18 U.S.C. § 3142(f). Here, the motion attaches letters or declarations of support from the defendant's: (1) former girlfriend; (2) brother; (3) neighbor; (4) current girlfriend; (5) prior criminal defense lawyer[2]; and (6) cousin. Dkt. # 17 at 7-17.[3] There is not a single representation – nor could there be – that these materials could not have been submitted or proffered at or around the time of the

---

[2] The Court should reject prior defense counsel's affirmation as an improper effort to selectively disclose attorney-client communications and strategy. For instance, prior defense counsel discusses his and the defendant's plan to make a presentation to this Office in what would have been an apparent effort to dissuade the government from pursuing charges. Dkt. # 17 at 15. This is inappropriate because "[t]he attorney-client privilege cannot be used as both a shield and a sword." *Overbaugh v. United States*, 483 F. Supp. 2d 223, 225 (N.D.N.Y. 2007) (Sharpe, J.); *see United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (observing that "[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.").

[3] The defendant's motion does not attach any professional risk or threat assessment as discussed at the end of the June 3, 2024 hearing. *See supra* at 2-3. The defense does not explain why it failed to submit such an assessment.

June 3, 2024 detention hearing.

What is more, the defense proceeded with a detention hearing at the earliest possible time, the first business day after the defendant's arrest, and did not seek an adjournment to gather more information to put before the Court. *See supra* at 2. Simply put, the defendant has offered *no* information that was not already available to him at the detention hearing. This deficiency alone is fatal to the defendant's bid to reopen the hearing. *See Hare*, 873 F.2d at 799 (affirming district court's decision not to reopen detention hearing based on proffered testimony of defendant's family members and a friend, because the proffered information was not new); *Dillon*, 938 F.2d at 1415-16 (district court did not err in declining to reopen detention hearing because affidavits from defendant's friends and family "was not new information within the meaning of § 3142(f)"); Decision & Order at 6, *United States v. Civitello*, No. 1:21-cr-386 (MAD) (N.D.N.Y. Feb. 23, 2022) (Stewart, J.) (denying motion to reopen detention hearing where "extremely competent" counsel "forcefully presented" arguments for release at initial detention hearing and did not "seek an adjournment of the detention hearing . . . to marshal additional information" because "[t]he failure to request a delay in these circumstances is also not a sufficient justification for reopening the detention hearing").[4]

## II. The Defendant Has Not Supplied Information That Has a Material Bearing on the Court's Prior Detention Decision

Even looking beyond the staleness of the defense's newly-tendered information, the motion should be denied on the independent basis that this information does not have a material bearing on the Court's prior decision. While the government does not doubt the sincerity of the defendant's witnesses, the bottom line, as it was in June, is that the defendant has exhibited extremely troubling behavior that strongly suggests that he presents a high risk of dangerousness and obstruction. Kind words from a girlfriend, a neighbor, a sibling, or even an esteemed criminal defense lawyer cannot assuage the Court's well-founded concerns about the risks that this defendant poses to numerous people involved in the proceedings addressing his conduct. All of these letters and declarations are simply character references for the defendant. They appear to stand for the proposition that the defendant is a good person – a point already argued by defense counsel at the detention hearing, *see* June 3, 2024 Tr. at 6-7 – and do nothing to address the deeply disturbing threats that the defendant has made. They do not justify a reopening of the detention hearing. *See, e.g.*, *Petrov*, 2015 WL 11022886, at *2 (denying motion to reopen detention hearing premised on previously rejected defense claims that, *inter alia*, "the statements [the defendant] made to various individuals are not properly construed as threatening" and "the victim's claims of intimidation are not credible").

All that said, there is *other* information that is in fact newly available and further supports the Court's detention ruling. For instance, Exhibit 1 to the defense's July 12, 2024 sealed filing

---

[4] There is some caselaw holding that aside from 18 U.S.C. § 3142(f), district courts have a general inherent authority to reconsider their prior bail rulings. *See United States v. Maxwell*, 510 F. Supp. 3d 165, 169 (S.D.N.Y. 2020) (Nathan, J.) (collecting cases). Still, reconsideration under a court's inherent authority is not unlimited and typically requires the movant to establish that the court "overlooked information or incorrectly applied the law," or that a failure to reconsider "would constitute manifest injustice." *United States v. Petrov*, 2015 WL 11022886, at *3 (S.D.N.Y. Mar. 26, 2015). Here, no such showing has been attempted, much less established.

provides at least two independent reasons for why the defendant should not be released.  First, 

Second

Accordingly, the evidence submitted by the defendant should not change this Court's analysis of the danger he presents.  In fact, there is new evidence that not only underscores the Court's concerns but adds another ground for detention.

### III.     The Defendant's Sixth Amendment Claim Should Be Rejected

The Court should likewise reject the defendant's cursory and incorrect suggestion that his Sixth Amendment rights might be violated by his pretrial detention.  Dkt. # 17 at 3-4.  As an initial matter, the defendant's generalized claims about the amount of discovery in this case and his confinement in a local jail were known to the defense at the time of the June 3, 2024 detention hearing.  The complex nature of the charges, the volume of evidence seized from the defendant's residence in February 2024, and the scope of the litigation involving the defendant and his companies would doubtlessly create the expectation that a significant volume of discovery was forthcoming.  Furthermore, defense counsel would have been attuned to potential restrictions at the two local jails that generally house pretrial detainees in this part of the District.  Despite this, the defense never raised the issue at the detention hearing.  As such, the defense's Sixth Amendment claims thus founder under 18 U.S.C. § 3142(f)'s requirement for new information.

In any event, the defense's Sixth Amendment claims are meritless. A defendant's right to counsel and participation in their defense may be violated when a jail "unreasonabl[y] interfere[s] with the accused person's ability to consult counsel." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001). "The touchstone" of this analysis "is reasonableness." *United States v. Shipp*, 2020 WL 3642856, at *3 (E.D.N.Y. July 6, 2020). And the Supreme Court has "never suggested that the accused's right to the assistance of counsel 'for his defence' entails a right to use counsel as a sword to contest pretrial detention." *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 235 (2008) (Thomas, J., dissenting). The Second Circuit has observed that "[a]lthough pretrial detention may hamper a defendant's ability to retain the attorney of his choice and undoubtedly makes communication with counsel and preparation for trial more cumbersome, without more, those consequences do not result in an interference of constitutional significance." *United States v. Dettelis*, 372 F. App'x 105, 106 (2d Cir. 2010).

Rather than providing any specific details about how his right to counsel has been unreasonably hindered by his pretrial detention under applicable law, the defendant resorts to soundbites from inapposite cases and generalities about potential complications caused by his confinement. First, the defendant's cases do not address his arguments. In *Wolfish v. Levi*, the Second Circuit merely affirmed a district court's order requiring a federal detention facility to provide inmates with law library access. 573 F.2d 118, 133 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979). The defendant does not claim that he lacks access to a law library, so *Wolfish*'s import is unclear. *Barker v. Wingo* is also off-point as it dealt with the standard for determining when the length of pretrial delay violates a defendant's Sixth Amendment right to a speedy trial. 407 U.S. 514, 536 (1972). Second, the defense's vague statements about a "restrictive visitation schedule" and "interruptions and artificially shortened visit times" do not demonstrate that the Albany County Correctional Facility is *unreasonably* restricting his access to counsel. The defense nowhere represents that counsel's requests to see or speak to the defendant were unreasonably denied, nor does it provide specific information about any supposed restrictions that are in place. The government understands that calls between inmates and their counsel can typically be made at any time and that in-person visitation rooms are available to inmates and counsel on weekday afternoons and evenings as well as during the weekend. Accordingly, the defendant's Sixth Amendment argument founders on the merits. *See Maxwell*, 510 F. Supp. at 178 (rejecting claim that defendant's confinement "interfere[d] with her ability to participate in her defense, and thus justif[ied] release" because defendant "provide[d] no authority to conclude that [lockdowns and curtailed in-person legal visitations during pandemic], standing alone, violate[d] her constitutional right to participate in her defense").

### IV.     The Court Should Not Hold a Hearing

Finally, the Court should not hold a hearing on the defendant's motion. As explained above, the defendant has not come close to meeting his burden to reopen the detention hearing under the Bail Reform Act because has not presented new and material information. So a hearing is not merited under that statute. Along a similar vein, even if the Court were to reconsider its prior determination under its inherent authority (and it should not), a hearing is unnecessary because the briefing "comprehensively lays out the parties' respective arguments" and "none of the new information has a material bearing on the Court's [prior] determination." *Maxwell*, 510 F. Supp. 3d at 178-79 (denying motion to reopen detention hearing without a hearing).

\* \* \*

For these reasons, the defendant's motion to reopen his detention hearing should be denied in its entirety and without a hearing.

Respectfully submitted,

CARLA B. FREEDMAN
United States Attorney

By: _____

Joshua R. Rosenthal
Michael Barnett
Assistant United States Attorneys
Bar Roll Nos. 700730 & 519140

cc: AFPD Matthew E. Trainor / AFPD Jeremy B. Sporn (by ECF)
    Senior U.S.P.O. Amy Brancatelli (by Email)