# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# FOR THE NORTHERN DISTRICT OF NEW YORK



Syracuse Office

4 Clinton Square
3RD FLOOR
SYRACUSE, NY 13202
(315) 701-0080
(315) 701-0081 FAX

Lisa Peebles
Federal Public Defender

Albany Office

54 State Street
STE 310
ALBANY, NY 12207
(518) 436-1850
FAX (518) 436-1780

Paul Evangelista
First Assistant

July 29, 2024

Hon. Christian F. Hummel, U.S. Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 441
Albany, NY 12207

    re:    United States v. Kris Roglieri
              Case No. 24-mj-261 (CFH)

Dear Judge Hummel:

I write in reply to the government's opposition to Mr. Roglieri's requests for a new detention hearing.

1. **New information**

Mr. Roglieri did present information that was unavailable at the time of the June 3, 2024 detention hearing. I neglected to specify the timeline associated with the document that was submitted under seal. *See* Dkt#16. The document was originally drafted by Mr. Roglieri near the end of January 2024. He had been experiencing significant stress and apprehension regarding the turn his various civil litigations had recently taken. Drafting the document was a means of working through his stress. Once it was drafted he printed out a single copy and put it in the pocket of a winter coat. It was never intended to be shared with anyone.

Mr. Roglieri forgot about the document having extirpated his anxiety for the time being. The document itself was not something that was available to the defense at the time of the hearing because all of Mr. Roglieri's possessions, including the document were in the custody of the Chapter 7 Liquidation trustees and even if he had recalled drafting the document, he had no authority to collect it on his own.  As the government has pointed out, the hearing may be reopened , "if the judicial officer finds that information exists that was not known[1] to the movant *at the time of the hearing.*"  18 U.S.C. § 3142(f)(2)(emphasis supplied).

His prior attorney eventually received a copy of the document on the evening of June 17 and he then forwarded to us the next morning.  I wasn't able to get to the jail until the following Friday to discuss the matter with him where he then recalled the circumstances of its drafting.  Due to the delicate nature of the document, we took some time to present the matter to the Court.

**2. Professional Risk Assessment**

The Risk assessment was the suggestion of Mr. Sporn.  The Court indicated that it would consider such evidence in the future but did not set the production of a completed risk assessment as a precondition to reopen the detention hearing.  Conducting a risk assessment requires retaining an expert.  Mr. Roglieri has no assets to retain an expert and our office has a limited budget for such

---

[1] know  (nō)
v. knew(nōō, nyōō), known(nōn), know·ing, knows
v. tr.
1. To perceive directly; grasp in the mind with clarity or certainty.
4. To have fixed in the mind: knows her Latin verbs.
v. intr.
1. To possess knowledge, understanding, or information.
2. To be cognizant or aware.
https://ahdictionary.com/word/search.html?q=know

matters and when we obtained the document we felt this could tip the scales for reasons spelled out below.[2]

### 3. Evidence of Risk of violence to others

The alleged risks of danger to specific individuals is contained in the government's submission forwarded the day before the hearing. Exhibits 2 & 3 of the Letter from USA as to Kris Roglieri, Dkt #6-1, contained the "chilling text messages" described by the government, in their opposition. *See* Letter from USA as to Kris Roglieri, Dkt#26, at pg. 2. Those exhibits are enhanced by Person-1's claims of oral statements made by Mr. Roglieri on May 24, 2024. Mr. Roglieri has already denied making any such statement and the conveyance of the alleged statements went through several people Roglieri to Person-1 to FBI agent to AUSA. It is apparent that the US Attorney's office did not take these alleged verbal statements very seriously at the time they received them. Why would they wait a full week to arrest Mr. Roglieri? They obtained a complaint four days after learning about the new statements and still were not in any hurry to arrest Mr. Roglieri. At any rate, Mr. Roglieri did not have access to any firearms at the time the statements were alleged to have been made and therefore even if he made any such statement he did not have any ability to carry it out.



---

[2] I have reached out to a local Psychiatrist who has helped our office in other cases but have not heard back yet.



  The document clearly provides material evidence that was not known on June 3 when the initial detention hearing was held which puts Mr. Roglieri's statements into a very different context. In light of this new evidence there is insufficient evidence to support that supports by clear and convincing evidence of a risk of non-appearnce or a danger to the community.  While the government argues that some of the information contained in our initial request is insufficient in and of itself to merit reopening a detention hearing, this does not preclude the Court's consideration thereof once the hearing is reopened.

  There are conditions that the Court could impose that would both ensure that Mr. Roglieri appears in court as required and will not be a danger to the community.  His girlfriend, Linda Oliver has secured a house in Poughkeepsie, NY where Mr. Roglieri could reside on home confinement with electronic location monitoring.  She works primarily in NYC which is why she sought out housing closer.  This would allow him to collaborate with his legal counsel which will provide the

best possible outcome in his case. Mr. Roglieri can assist in his own defense by identifying and thereby preserving items currently in the possession of the bankruptcy trustees that contain evidence useful in his defense. Even on restrictions he will be able to meet more often and for longer periods of time with his legal counsel without having to deal with the institutional regulations that are often necessary to allow correctional facilities to operate properly.

There are risks that the Court should take into account in its decision that prolonged pretrial detention could eventually result in a depravation of due process in this case and the Court should weigh the strength of the evidence justifying detention against the length of detention. *See U.S. v. Briggs*, 697 F3d 98, 101 (2nd Cir 2012). "[T]he difficulties faced by the prosecution in a large and complex case do not justify the indefinite detention of the defendants." *Id.* at 103. With 55,634 pages of discovery materials to review preparation for trial will take a very long time. The government cannot hide behind stipulations and the complexity of the case alone as sufficient to unnecessarily detain a defendant in an economic case.

Sincerely,

Matthew E. Trainor
Assistant Federal Public Defender, Albany Office
Bar Roll # 105643
matthew_trainor@fd.org

cc:   AUSA Joshua Rosenthal – via ECF
      AUSA Michael Barnett – via ECF
      USPO Amy Brancatelli – via email